NAME  Jose Luis Reyes

PRISON NUMBER  V-61218
3A01-215
P.O. Box 3461

CURRENT ADDRESS OR PLACE OF CONFINEMENT
Corcoran, CA  93212-3461

CITY, STATE, ZIP CODE





FILED

AUG - 4 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

JOSE LUIS REYES

(FULL NAME OF PETITIONER)

PETITIONER

v.

DERRAL ADAMS, WARDEN
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

RESPONDENT

and

The Attorney General of the State of
California, Additional Respondent.

Civil No. _____

**'08 CV 1422 DMS CAB**

(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack:
   San Diego Superior Court, El Cajon

2. Date of judgment of conviction:
   Septempber 27, 2004

3. Trial court case number of the judgment of conviction being challenged:
   SCE238071

4. Length of sentence:
   18 YEARS

CIV 68 (Rev. Dec. 1998)

::ODMA\PCDOCS\WORDPERFECT\22833\1

5. Sentence start date and projected release date:
   November 30, 2004; release in 2020 sometime.

6. Offense(s) for which you were convicted or pleaded guilty (all counts):
   Inflicting serious injuries on common-law wife

7. What was your plea? (CHECK ONE)
   (a) Not guilty         ☒
   (b) Guilty             ☐
   (c) Nolo contendere    ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury        ☒
   (b) Judge only  ☐

9. Did you testify at the trial?
   ☒ Yes ☐ No

### DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the <u>California Court of Appeal</u>?
    ☒ Yes ☐ No

11. If you appealed in the <u>California Court of Appeal</u>. answer the following:
    (a) Result: Affirmed
    (b) Date of result, case number and citation, if known:
        March 15, 2006 – D045593
    (c) Grounds raised on direct appeal:
        I.  The trial court's refusal to allow defense counsel to cros-
            examine wife regarding her fear of losing her children if
            she failed to cooperate w/prosecution violated appellant's
            Sixth Amendment right to confront his accuser constituting
            reversible error.

12. If you sought further direct review of the decision on appeal by the <u>California Supreme Court</u> (e.g., a Petition for Review), please answer the following:
    (a) Result: Denied
    (b) Date of result, case number and citation, if known:
        Uncertain
    (c) Grounds raised:
        Same as on Direct Appeal to the Appellate Court with an
        additonal ground of IAC on trial counsel.

13. If you filed a petition for certiorari in the <u>United States Supreme Court</u>, please answer the following with respect to that petition:

    (a) Result:

    (b) Date of result, case number and citation, if known:

    (c) Grounds raised:

N/A

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Superior Court</u>?
  ☒ Yes   ☐ No

15. If your answer to #14 was "Yes," give the following information:

    (a) <u>California Superior Court</u> Case Number:  SCE238071/EHC552

    (b) Nature of proceeding:  Habeas Corpus

    (c) Grounds raised:  Ineffective Assistance Of Counsel

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
      ☐ Yes   ☒ No

    (e) Result: _____

    (f) Date of result: __March 23, 2007_____

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Court of Appeal</u>?
  ☒ Yes   ☐ No

17. If your answer to #16 was "Yes," give the following information:

    (a) **California Court of Appeal** Case Number: D051386

    (b) Nature of proceeding: Habeas Corpus

    (c) Grounds raised: IAC

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes ☒ No

    (e) Result:

    (f) Date of result: Nov. 8 2007

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
    ☒ Yes ☐ No

19. If your answer to #18 was "Yes," give the following information:

    (a) **California Supreme Court** Case Number: S160370

    (b) Nature of proceeding: Habeas Corpus

    (c) Grounds raised: IAC

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes ☑ No

    (e) Result: Denied

    (f) Date of result: Jul· 9 · 2008

20. If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

N/A

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your first federal petition for writ of habeas corpus challenging this conviction?
   ☒ Yes ☐ No    (IF "YES" SKIP TO #22)
   (a) If no, in what federal court was the prior action filed?
      (i) What was the prior case number? _____
      (ii) Was the prior action (CHECK ONE):
         ☐ Denied on the merits?
         ☐ Dismissed for procedural reasons?
      (iii) Date of decision: _____
   (b) Were any of the issues in this current petition also raised in the prior federal petition?
      ☐ Yes ☐ No
   (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
      ☐ Yes ☐ No

CAUTION:
   • **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

   • **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

   • **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**:
THE TRIAL COURT'S REFUSAL TO ALLOW DEFENSE COUNSEL TO CROSS-EXAMINE DENISE WYATT, REGARDING HER FEAR OF LOSING HER CHILDREN IF SHE FAILED TO COOPERATE WITH THE PROSECUTION, VIOLATED PETITIONER'S SUBSTANTIAL CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSER UNDER THE U.S. CONSTITUTION'S SIXTH AMENDMENT

Supporting FACTS (state *briefly* without citing cases or law)

DUE TO THE NATURE AND COMPLEXITY OF THE FOREGOING ISSUE, PLEASE SEE THE ATTACHED, SEPARATE WRIT PETITION WITH MEMORANDUM OF POINTS AND AUTHORITIES.

Did you raise GROUND ONE in the California Supreme Court?
[X] Yes [ ] No.

(b) **GROUND TWO**: PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT
TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Supporting FACTS (state *briefly* without citing cases or law):

DUE TO THE NATURE AND COMPLEXITY OF THE FOREGOING ISSUE,
PLEASE SEE THE SEPARATE, ATTACHED HABEAS PETITION WITH
POINTS AND AUTHORITIES.

Did you raise GROUND TWO in the California Supreme Court?
☒ Yes ☐ No.

1  Jose Luis Reyes, V-61218
    3A01-215U / P.O. Box 3461
2  Corcoran, CA  93212-3461

3  Petitioner In Pro Se





FILED

AUG - 4 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

7                  I N

8  T H E   U N I T E D   S T A T E S   D I S T R I C T   C O U R T

9  F O R   C A L I F O R N I A ' S   S O U T H E R N   D I S T R I C T

11                '08 CV 1422 DMS CAB

| | |
|---|---|
| JOSE LUIS REYES | Case No.: |
| Petitioner, | PETITION FOR WRIT OF HABEAS CORPUS & |
| v. | MEMORANDUM OF POINTS AND AUTHORITIES |
| D. ADAMS, WARDEN | |
| Respondent. | |

20         SEPARATE - ATTACHED

21          WRIT PETITION

25         B. Thomas BuenaVista
           Petitioner's Authorized Asst.
26         CDC#: K-47864

27         Respectfully Submitted

RT PAPER
E OF CALIFORNIA
113 (REV. 8-72)

1                 T A B L E   O F   C O N T E N T S

2

3    Table Of Contents                                            i

4    Table Of Cases                                               ii

5    Issues Presented                                             1

6    STATEMENT OF THE CASE                                        2

7         A.   Basis For Jurisdiction In The U.S.  District
               Court For                                          3
8
          B.   Bail Status                                        3
9

10   STATEMENT OF FACTS                                           3

11
                           A R G U M E N T
12

13                              I

14        THE TRIAL COURT'S REFUSAL TO ALLOW DEFENSE COUNSEL
          TO CROSS-EXAMINE DENISE WYATT, REGARDING HER FEAR
15        OF LOSING HER CHILDREN IF SHE FAILED TO COOPERATE
          WITH THE PROSECUTION, VIOLATED PETITIONER'S SUB-
16        STANTIAL CONSTITUTIONAL RIGHT TO CONFRON HIS
          ACCUSER UNDER THE U.S. CONSTITUTION'S SIXTH AMENDMENT
17                         Page 11

18
                               II
19
          PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT
20        TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL
                          Page 16
21
     CONCLUSION                                                   19

22
     CERTIFICATE OF BRIEF LENGTH                                  20
23
     EXHIBIT A:   STATE COURT OF APPEALS - OPINION                20

24        "    B:  Habeas Corpus Orders

25        "    C:  Letter To Prospective Witness' Landlord

26

27   Proof Of Service                                             21

28   ///

IRT PAPER
'E OF CALIFORNIA
113 (REV. 8-72)

4789

1

**T A B L E   O F   C A S E S**

2

3
Case:                                                          Page:

4
Alford v. U.S. (1931) 382 U.S. 687                              11

5
Crawford v. Washington (2004) 541 U.S. 36                       11

6
Davis v. Alaska (1974) 450 U.S. 308                            12, 13

7
Delaware v. Van Arsdall (1986) 475 U.S. 673                    11, 13,
                                                               14

8
Krane v. Kentucky (1986) 476 U.S. 683                          14

9
Strickland v. Washington (1984) 466 U.S. 668                   16

10
Relevant California Citations:

11
     People v. Box (2000) 23 C.4th 1153                        13

12

13
Federal Statutory Law

     Title 28 U.S.C. § 2254                                    3

14
U.S. Constitution Amendments

15
     Sixth                                                     1, 2,
                                                               11, 13,
16                                                             16,17

17
California Statutory Law

18
     Evidence Code §§ 352                                      9, 13
19                   780(f)                                    8, 11,
                                                               12

20
     Health & Safety Code § 11378.9                            2

21
     Penal Code §§ 236                                         2
22                237(a)                                       2
                  243(e)(1)                                    2
23                245(a)(1)                                    2
                  245(b)                                       2
24                273.5(e)                                     2
                  422                                          2
25                667(a)(1)                                    2
                  667(b)_(I)                                   2
                  667.5(b)                                     2
26                1118.1                                       2
                  1170.12                                      2
27                1237(a)                                      3
                  1385                                         3

28

1  Jose Luis Reyes, V-61218
   3A01-215U/P.O. Box 3461
2  Corcoran, CA  93212-3461

3  Petitioner In Pro Se

4

5                              IN

6    T H E   U N I T E D   S T A T E S   D I S T R I C T   C O U R T

7    F O R   C A L I F O R N I A ' S   S O U T H E R N   D I S T R I C T

8
   **JOSE LUIS REYES**              )     Case No.: _____
9                                   )
                **Petitioner,**     )     **PETITION FOR WRIT OF**
10                                  )     **HABEAS CORPUS &**
                **v.**              )     **MEMORANDUM OF POINTS**
11                                  )     **AND AUTHORITIES**
   **D . ADAMS, WARDEN**            )
12                                  )
                **Respondent.** et al )
13
   **TO THE HONORABLE PRESIDING JUSTICE AND ASSOCIATE JUSTICES OF**
14
   **THE U.S. DISTRICT COURT'S SOUTHERN DISTRICT, AND THEIR**
15
   **REPRESENTATIVES:**
16
   **ISSUES PRESENTED[1]:**
17
   1.    1.   DID THE TRIAL COURT'S REFUSAL TO ALLOW DEFENSE COUNSEL
18
                TO CROSS-EXAMINE DENISE WYATT, REGARDING HER FEAR OF
19
                LOSING HER CHILDREN IS SHE FAILED TO COOPERATE WITH THE
20
                PROSECUTION, VIOLATED PETITIONER'S SUBSTANTIAL CONSTI-
21
                TUTIONAL RIGHT TO CONFRONT HIS ACCUSER UNDER THE U.S.
22
                CONSTITUTION'S SIXTH AMENDMENT?
23
         2.   WAS TRIAL COUNSEL'S LESS THAN ADEQUATE ADVISEMENT TO
24
                PETITIONER REGARDING A PLEA BARGAIN; SAID COUNSEL'S
25
                FAILURE TO CONTACT AND INTERVIEW DEFENSE WITNESSES, AND;
26
   _____
27   [1]"CT" refers to the clerk's transcript.  "RT" refers to the
   reporter's transcript.  "Exhibit" refers to attached exhibits.
28 Unless otherwise stated, all references are to the CA Penal Code.

OURT PAPER
TATE OF CALIFORNIA
TD. 113 (REV. 8-72)

5 34769

1    COUNSEL'S FAILURE TO MAKE AND ADEQUATE OFFER OF PROOF

2    WHILE THE STAR WITNESS WAS ON THE STAND, FOR PURPOSES

3    OF CROSS-EXAMINATION DEPRIVE PETITIONER OF THE SIXTH-

4    AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL?

5

### S T A T E M E N T   O F   T H E   C A S E

6    Petitioner, Jose Luis Reyes, was charged, in an Amended

7  Information filed in the San Diego Superior Court, with re-

8  peatedly beating up, and inflicting serious injuries on, his

9  common-law wife, Denise Wyatt. (Penal Code §§ 243(e)(1), 245(a)-

10  (1), and 273.5(e).)  Petitioner Reyes was also accused of

11  falsely imprisoning Ms. Wyatt in a motel room on one of these

12  occasions (Penal Code §§ 236 and 237(a)), and threatening one

13  of Ms. Wyatt's neighbors. (Penal Code § 422.)  The prosecution

14  alleged, for sentence enhancement purposes, that Petitioner

15  had previously been convicted of, and served time in prison

16  for, assault and possessing "controlled substances" for sale.

17  (Penal Code §§ 245(b), 667(a)(1), 667.5(b), 667(b)-(i), and

18  1170.12; Health & Safety Code § 11378.)  (CT 13-17.)

19    Trial was by jury. (CT 171.)

20    A defense motion for a directed verdict of acquittal was

21  granted, as to the false imprisonment charge, pursuant to Penal

22  Code § 1118.1. (CT 175.)  At the trial's conclusion the jury

23  found Petitioner not guilty of making a criminal threat against

24  the neighbor, and guilty of the remaining charges. (CT 177.)

25  On the prison prior allegations Petitioner waived his right

26  to a jury trial and the court found the allegations true at

27  Petitioner's court trial. (RT 291; CT 177-178.)

28  ///

RT PAPER
E OF CALIFORNIA
113 (REV. 8-72)

4769

-2-

1    Petitioner's motions for a new trial and Romero to strike

2    a strike (PC § 1385), were denied.  (CT 150-156, 181.)  Peti-

3    tioner was sentenced to state prison for a total unstayed term

4    of 18 years and four months.  (CT 157, 182-183.)

5    A timely notice of appeal was file pursuant to PC § 1237(a)

6    and on March 15, 2006, the Court Of Appeal (Fourth Appellate

7    Distr.) affirmed the conviction.  (Exhibit A.)  The Petition

8    For Review was subsequently denied in the State Supreme Court

9    and on habeas corpus the Superior Court denied the petition

10    on March 21, 2007; the Court Of Appeal denied the petition

11    on November 8, 2007, and; the State Supreme Court denied the

12    petition on *Jul-9-2008* .  (Exhibit B.)

13    A.   Basis For Jurisdiction In The U.S. District Court:

14    Petitioner is appealing the State Supreme Court's

15    denial of his Petition For Writ Of Habeas Corpus pursuant

16    to California Court Rule 28(b)(1).  The Southern District

17    Court has jurisdiction pursuant to Title 28 U.S. Code

18    § 2254, petition for writ of habeas corpus by a person

19    in state custody.

20    B.   Bail Status:

21    Petitioner is in custody serving his prison term.

22    S T A T E M E N T   O F   F A C T S

23    The facts of tis case are disputed.  Though convicted

24    by a jury on the serious bodily injury counts of the case,

25    Petitioner was acquitted on a false imprisonment allegation

26    and found not guilty on charges of threatening his girlfriend's

27    neighbor.  Prior to trial Petitioner was not properly advised

28    ///

COURT PAPER
ATE OF CALIFORNIA
D. 113 (REV. 8-72)

34769

-3-

1    as to the plea bargain by trial counsel. (RT 9-18.) Rather,

2    the plea settlement was presented at the last minute just before

3    trial was to begin. Petitioner was not afforded the time or

4    information to understand what his defense looked like in com-

5    parison with the realities of modern trials in San Diego County.

6    Also before trial, Petitioner offered the names of several

7    witnesses to trial counsel, Attorney, Allen Williams, for pur-

8    poses of investigation and the mounting of a defense. The first

9    potential witness referred to trial counsel was a woman only

10   known to Petitioner as "Deena". Petitioner told counsel that

11   he had tape recorded a conversation between himself and alleged

12   victim, Denise Wyatt, at "Deena's" apartment. This tape recorded

13   conversation from Deena's answering machine would show the jury

14   that Wyatt would threaten to blame Petitioner for self-inflicted

15   injuries to San Diego Police in attempts to extort drugs and

16   money from Petitioner. Although Deena and the tape were at

17   an apartment complex that Petitioner told his attorney about,

18   nothing was done by counsel to secure this exculpatory evidence.

19   On appeal Petitioner attempted to contact Deena through the

20   apartment complex manager, but to no avail. (Exhibit C.)

21   The next two witnesses Petitioner referred to counsel were

22   a couple who had accompanied Petitioner to the alleged victim's

23   apartment and observed a heated argument between them. The

24   man's name was Jaime Navarrte and his girlfriend's name was

25   Rosalia. Trial counsel never followed up on them despite

26   Petitioner's numerous queries about counsel's progress with

27   his defense witnesses.

28   The fourth witness Petitioner referred to counsel was Joyce

1  Romano.  Ms. Romano had been an acquaintance to both Petitioner

2  and Denise Wyatt and was privy to their drug-crippled relations

3  and the manipulative antics of the alleged victim who would

4  use local police to extort money and drugs from Petitioner.

5  Trial counsel had Ms. Romano's address and phone number, but

6  for whatever reason, never even picked up the phone to check

7  it out.

8  **Jury Trial:**

9      The evidence presented to the jury was very much one-sided.

10  The jury was apprised that Denise Wyatt had had an "on again-

11  off again" relationship with Petitioner for a few years.  Wyatt

12  testified that, on September 11, 2003, Petitioner entered her

13  apartment in El Cajon, obviously intoxicated and upset.  She

14  told the jury Petitioner threw beer on her, punched her in the

15  head, and stormed out of the apartment.  (RT 52-56, 74-78.)

16  Wyatt further testified that on October 15, 2003, Petitioner

17  again visited her and became upset upon discovering a hickey

18  on Wyatt's neck which he suspected was from another man.  He

19  immediately began kicking and punching her.  Then he stopped

20  when Wyatt's friend Amanda Aguilar begged Petitioner to stop.

21  Petitioner then fled from the apartment.  (RT 57, 81, 122.)

22  Wyatt stated a third incident occurred on February 1, 2004,

23  in which she was living with Petitioner at the Ambassador Motel

24  in El Cajon.  Petitioner once again became angry at her and

25  punched her between the eyes after he became jealous because

26  the pair had had a threesome with a friend the night before.

27  (RT 64, 93.)

28      Wyatt also told the jury about a fourth incident on March

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

85 34769

1  31, 2004, in an automobile while she, her son, Justin, and Peti-

2  tioner were going out to eat.  Petitioner, who was driving,

3  was upset because he was unable to see out of the dirty windows.

4  He became enraged when she pointed out that tree sap had gotten

5  on the car and accused her of "trying to [piss] him off," and

6  attempted to hit her.  (RT 70.)

7      Wyatt also testified that she and Petitioner had a daughter

8  together named Kayla, who was three years old at the time of

9  trial.  (RT 33, 50.)  On cross-examination, trial counsel asked

10  Wyatt a number of questions concerning Kayla:

11          Q:  "Where were you living March 31?"

12          A:  "I was staying in a hotel."

13                          * * *

14          Q:  "Where was Kayla?"

15          A:  "I think she was probably...she wasn't

16              in Tecate.  I'm pretty sure she was at

17              Diana's house."

18                          * * *

19          Q:  "Is Kayla living in Tecate now?"

20          A:  "No."

21          Q:  "Did you and Luis ever argue about

22              Kayla and her placement?"

23                          * * *

24          Q:  "March 31, did you argue about Kayla?"

25          A:  "No."

26          Q:  "On February 1, did you argue about Kayla?"

27          A:  "No."

28          Q:  "On October 15, did you argue about Kayla?"

OURT PAPER
TATE OF CALIFORNIA
TD. 113 (REV. 8-72)

5 34760

-6-

1   A:  "No."

2   Q:  "On September...11th, did you argue

3       about Kayla?"

4   A:  "I don't think so.  I don't remember.

5       We didn't argue about Kayla."

6   Q:  "Had you..."

7   A:  "No, we didn't."

8   Q:  "Never argued about her?"

9   A:  "Not really, not where she was at or

10      her placement, no."

11  Q:  "She was placed with his mother, right?"

12  A:  "Sometimes she would be at his Mom's, yeah."

13  Q:  "When was she placed with his mother?"

14  [Prosecutor]:  "Objection.  Relevance."

15  The Court:  "Sustained."

16      (RT  99-100.)

17      After Wyatt was excused as a witness, but while she was

18  still in the courtroom subject to recall and under subpoena,

19  a side-bar conference was held:

20          [Defense Counsel]:  "...your Honor, the reason

21          I was asking her [i.e., Wyatt] where Kayla

22          was...[is that] part of the defense's theory

23          is, since...[Wyatt] is losing Kayla because

24          ...[the San Diego County Department of Social

25          Services] has taken Kayla away from her...

26          She's in a foster home--[this] could [cause

27          Wyatt to] be spite[ful] against Mr. Reyes

28          [and create a motive for her] to fabricate.

1                       But I didn't want to get into that

2                       because...I don't know whether the

3                       court wants [me] to go into [that].

4                       She's lost the children."

5          The Court:  "Well, she's been excused as

6                   a witness, number one, and I appreciate

7                   you're not getting into anything like

8                   that prior to discussing it with the

9                   court.  I'm not sure I see the connection

10                 ...between what she may have testified

11                 to and whether or not she lost her kids.

12                 Unless there is more of a substantial

13                 connection that you can give as an offer

14                 of proof.  I think I would not be allowing

15                 that type of testimony in."

16        [Defense Counsel]:  "Thank you.  I wanted to

17                 make sure we got that on the record."

18        The Court:  "Okay."  (RT 109.)

19     The jury found Petitioner guilty of the spousal battery

20 and assault charges.  (CT 177.)

21     Trial counsel argued in his motion for new trial that

22 "the trial court erred in excluding evidence of witness Wyatt's

23 bias by way of her motive to fabricate," and that this violated

24 Petitioner's Confrontation Clause rights as well as California

25 Evidence Code § 780(f).  Trial counsel argued that, since Wyatt

26 was the critical prosecution witness, and since she may have

27 had a motive "of having to give defendant up to satisfy her

28 social worker," counsel should have been entitled to explore

1   possible bias as a witness and impeach her credibility on this

2   basis.  Defense counsel also argued that, since the court's

3   error was one of constitutional dimensions, and could not be

4   said to be harmless beyond a reasonable doubt, a new trial

5   was required.  (CT 135-138.)

6       The prosecutor, in her opposition, conceded that the de-

7   fendant had the right to elicit evidence showing witness bias.

8   However, she argued that, since Wyatt might be facing the loss

9   of her children due to her admitted drug usage and transient

10  life-style, there was no guarantee that defense counsel's

11  inquiry would demonstrate that she was biased against the defen-

12  dant.  Furthermore, even if Wyatt had testified that she had

13  to "give defendant up to satisfy her social worker," such a

14  sentiment did not automatically translate into perjury.  Thus,

15  since the possible connection between the child custody issue

16  and Wyatt's possible bias was tenuous, and; given the highly

17  prejudicial nature of the proposed inquiry (i.e. the implication

18  that Wyatt was an unfit mother and thus not believable), the

19  court was within its Evidence Code § 352 discretion in restric-

20  ting the defense cross-examination.  (CT 146-147.)

21      The matter came on for hearing.  The trial judge

22  acknowledged that he had not been able to review his notes

23  since his current clerk had been unable to find them.  However,

24  the judge proceeded to rule on and deny the motion for new

25  trial stating:

26          "I believe I weighed, in making the decision to

27      preclude this type of cross-examination...the eviden-

28      tiary value of this evidence, its relevance, its

1    importance, against the [undue] consumption of

2    time it would take, the trial within a trial that

3    would result, and the...relevance it would have

4    to...bias or other motive [to fabricate] on behalf

5    of the victim.  I re-engaged [in] that same weigh-

6    ing process [in considering the new trial motion]

7    and I believed then and I believe now that the

8    potential probative value of that evidence was

9    minimal and was outweighed by the time it would

10   take to present it and the somewhat minimal rele-

11   vance that it had to the issues that the defense has

12   indicated they would have liked to present.  And,

13   therefore, I believe the ruling was correct then

14   and now...And, therefore the motion for a new trial

15   is denied."  (RT 330.)

16   Petitioner was sentenced to state prison for a total un-

17   stayed term of 18 years and four months.  (CT 157, 182-183.)

18   On direct appeal, appellate counsel raised the federal,

19   constitutional issues herein with the exception of certain

20   facts Petitioner presently employs as part of his assertion

21   that he was deprived the effective assistance of trial counsel.

22   The Court Of Appeal and the California Supreme Court affirmed.

23   (Exhibit A.)

24

25

26   ///

27   ///

28

1

## A R G U M E N T

2

3                                      I

4        THE TRIAL COURT'S REFUSAL TO ALLOW DEFENSE COUNSEL
         TO CROSS-EXAMINE DENISE WYATT, REGARDING HER FEAR
5        OF LOSING HER CHILDREN IF SHE FAILED TO COOPERATE
         WITH THE PROSECUTION, VIOLATED PETITIONER'S SUB-
6        STANTIAL CONSTITUTIONAL RIGHT TO CONFRONT HIS
         ACCUSER UNDER THE U.S. CONSTITUTION'S SIXTH AMENDMENT

7

8        I. Standard

9        A criminal defendat's right to fully confront and cross-

10  examine his accuser is guaranteed by the Sixth Amendment to the

11  U. S. Constitution.  Crawford v. Washington (2004) 541 U.S. 36;

12  Delaware v. Van Arsdall (1986) 475 U.S. 673; Alford v. U.S. (1931)

13  382 U.S. 687.  "Where testimonial statements are at issue, the

14  only indicium of reliability sufficient to satisfy constitutional

15  demands is the one the Constitution actually prescribes:

16  confrontation."  Crawford, supra, at 68-69.

17  **The State's Disposal Of This Issue Is Unwarranted.**

18        The Court Of Appeals' Opinion concludes that because trial

19  counsel did not properly offer proof that clearly identified

20  the purpose of said counsel's inquiry to Wyatt about Kayla's

21  domestic placement, the trial court did not abuse its discretion

22  in not allowing said counsel to cross-examine Wyatt about her

23  possible motivation in her testimony.

24        California Evidence Code § 780 provides that the jury may

25  consider in determining a witness' credibility "any matter

26  that has any tendency in reason to prove or disprove the truth-

27  fulness of the witness' testimony" including the existence

28  of bias, interest, or other motive to fabricate or exaggerate.

1  (Evidence Code § 780(f).)

2      A witness' fear or susceptibility to pressure by the state

3  is fair game for cross-examination.  Thus, the trial court

4  may not improperly restrict cross-examination of a witness on his

5  probationary status since the defendant is entitled to show

6  the susceptibility of the witness to undue pressure - i.e.,

7  the revocation of his probation and re-incarceration - , and

8  his possible motive to cooperate with the authorities.  Davis v.

9  Alaska (1974) 450 U.S. 308.  Similarly, it is proper for the

10  defense to ask a prosecution witness whether she has been pro-

11  mised immunity from punishment for criminal charges brought

12  against her; and it is also permissible to inquire into the

13  mere fact that charges are pending against the witness as a

14  circumstance tending to show that she may, by testifying, be

15  seeking favor or leniency.

16      The actual state of mind of the witness is the important

17  element in impeachment for bias, prejudice, or any improper

18  motive.  If a witness believes she has something to gain by

19  slanting her testimony in favor of the prosecution, the evidence

20  to prove this belief and motive is admissible as impeaching

21  evidence.  This is true even though there is no reliable basis

22  for the witness having such a state of mind.  So long as the

23  witness believes that the prosecution can reward or punish her

24  depending upon her testimony, the improper motive to fabricate

25  is just as real and operative in influencing her testimony as

26  if the prosecutor actually had this power.  (Jefferson,

27  California Evidence Bench Book, Vol. 1, § 27.18 at pg. 806-807.)

28      Verisimilar, defense counsel must be allowed to inquire

-12-

1 into a critical prosecution witness' possible motive to fabricate

2 or exaggerate her testimony in order to gain revenge.  Such

3 an inquiry cannot be disallowed on the grounds that there is

4 no evidence of revenge, since the entire purpose of the inquiry

5 is to ascertain this.

6     In summary, the Confrontation Clause and fairness principles

7 generally guarantee a criminal defendant the right to fully

8 explore a witness' bias on cross-examination subject only to

9 reasonable limits based on concerns about harassment, confusion

10 of the issues, or relevance under Evidence Code § 352.  People

11 v. Box (2000) 23 Cal.4th 1153, 1203, citing Davis v. Alaska

12 and Delaware v. Van Arsdall, supra.)

13     In the case at bar, contrary to the Court of Appeal, the

14 trial court denied Petitioner his right to fully confront his

15 accuser by preventing his attorney from questioning critical

16 prosecution witness - alleged victim, Denise Wyatt, as to her

17 possible bias and motive to fabricate or exaggerate due to the

18 actual or potential loss of her children.

19     It appears that the Department of Social Services had taken

20 away at least one of the children (Kayla), and placed her at

21 least temporarily with relatives and/or a foster family.  Trial

22 counsel had the constitutional and statutory right to cross-

23 examine her in order to ascertain whether she believed that,

24 unless she gave Petitioner up to satisfy the prosecution and

25 the Department of Social Services, she would lose her children

26 permanently.

27     Contrary to the Court of Appeal, trial counsel was not

28 required to establish, prior to cross-examining Wyatt, that

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

85 34769

1  she blamed Petitioner for losing her daughter, sought revenge

2  against him, or believed that she would regain custody if she

3  testified against Petitioner.  Moreover, it does not matter

4  that there may have been other reasons for removing the children

5  from Wyatt's custody such as her use of methamphetamine and

6  her transient life-style.  All that matters is Wyatt's state

7  of mind and whether or not she believed that, unless she coopera-

8  ted, she could lose her children, and defense counsel was

9  entitled to explore this.

10      The State's attempt to dismiss Petitioner's confrontation

11  right on trial counsel's technical faux'pas is terribly dis-

12  couraging to the constitutional fabric of a trial.  Trial counsel

13  was entitled question the witness about her possible motive

14  to testify against Petitioner, and wasn't required to establish

15  an "evidentiary basis" for the cross-examination in advance.

16  Moreover, contrary to the Court of Appeal, the foregoing serious

17  violation of Petitioner's Confrontation Clause guarantees was

18  not harmless beyond any reasonable doubt.  Krane v. Kentucky

19  (1986) 476 U.S. 683; Delaware v. Van Arsdall, supra, 475 U.S.

20  at 684.

21      The State bases its harmless error conclusion on the "over-

22  whelming" evidence against Petitioner consisting of Wyatt's

23  testimony as corroborated by other witnesses.  However, a more

24  careful perusal of the record indicates that the prosecution's

25  "overwhelming" case, like Iraq's WMD's, never really existed.

26  In fact, Wyatt's testimony falls below the reasonable doubt

27  bar set by Delaware v. Van Arsdall, supra, at 684.  Wyatt was

28  the only percipient witness to implicate Petitioner in two

1   incidents, which, according to her, occurred on September 11,

2   2003, and  February 1, 2004.

3       Moreover, it is reasonably inferable from the testimony

4   of prosecution witness - nurse, Pamela Bryson, that Wyatt grossly

5   exaggerated the injuries which she suffered during the October

6   15, 2003 incident, since, while Wyatt testified that she had

7   been kicked in the stomach, the medical examination failed to

8   corroborate this.  Further, as the State acknowledges, the

9   credibility of Wyatt, an admitted methamphetamine user, was

10  highly questionable and since she was the prosecution's star

11  witness, so was the prosecution's case.

12      It cannot be said beyond any reasonable doubt that, had

13  trial counsel been allowed to cross-examine Wyatt concering

14  the loss of her children, her possible motive to give up Mr.

15  Reyes (Petitioner) in order to satisfy the authorities, and

16  her possible motivation to revenge herself upon him for her

17  loss by fabricating or exaggerating what he actually did, this

18  would have made no difference.

19      For the foregoing reasons, the State's disposal of this

20  substantial, constitutional issue, mischaracterizes a defen-

21  dant's right to confront his accuser as some out-of-reach point

22  in the judicial cosmos.  For this reason, this Court should

23  grant review of this issue and hold hearings to resolve the

24  matter.  In the alternative, this Court should grant review

25  and send the issue back to the State for reconsideration.

26  ///

27  ///

28  ///

II

**PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT
TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

I. Standard

To succeed on a claim of ineffective assistance of counsel, a "[d]efendant must show that counsel's performance was both deficient and prejudicial, i.e., that it is reasonably probable that counsel's unprofessional errors affected the outcome." Strickland v. Washington (1984) 466 U.S. 668.

**Cause:**

Trial counsel, Allen Williams was ineffective for the purpose of a Sixth Amendment inquiry in three areas:

1.  Trial counsel failed to conduct adequate investigations; failed to locate witnesses who have seen and heard the alleged victim, Denise Wyatt, threatening to frame Petitioner with battery on a spouse; such failure resulted in the total withdrawal of a viable defense;

2.  Trial counsel's inadequate advisement on the settlement terms depriving Petitioner the chance to knowingly consider a deal constituted deficient advocacy;

3.  Trial counsel's failure to adequately prepare for trial, to research the law governing rules of evidence, resulted in the loss of a chance to impeach key witness, Denise Wyatt.

Because each of these substandard efforts prejudiced the

///

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

85 34769

-16-

1  case, reversal is warranted.

2  **Prejudice:**

3      Trial counsel's failure to speak to those potential witnes-
4  ses who could substantiate Petitioner's defense, resulted in
5  no defense for Petitioner.  The severity of the charges against
6  Petitioner were such that witnesses, if available, were required
7  to dispel the prosecution's trumped up theory.  Petitioner in
8  no way attempts to lighten his involvement in this case and
9  in the dysfunctional relationship he was a part of.  Counsel's
10 obligation to interview witnesses cannot be excused, however,
11 simply because Petitioner had some degree of culpability in
12 an unspeakable act.  Had the jury heard from said witnesses
13 there is a reasonable likelihood that the out come would be
14 different.

15      As well, in light of trial counsel's missing defense, it
16 was incumbent upon said counsel to properly advise Petitioner
17 to take the eight-year deal.  Trial counsel admis on the record
18 that he failed in this area.  Petitioner would definitely taken
19 advantage of the deal had he known that trial counsel had no
20 intention of presenting a viable defense.  The prejudice evi-
21 dent in this warrants reversal.

22      Lastly, the State held that Petitioner failed to preserve
23 his Confrontation Clause claim since defense counsel's offer
24 of proof was vague and insufficient.  Trial counsel did not
25 adequately articulate his reasons for the proposed cross-
26 examination, in response to the trial court's repeated requests
27 for an offer of proof, while Denise Wyatt was still on the
28 witness stand and/or subject to recall.

1    However, assuming that the Court Of Appeal is correct,

2    this merely means that the convictions must be reversed on

3    grounds of prejudicial ineffective assistance of counsel.

4    Strickland, supra, at 686, 691-692.

5         No satisfactory tactical explanation of trial counsel's

6    failure to make an adequate offer of proof can be gleaned from

7    the record.  Thus, while the State's highest court prefers

8    these types of claims to be raised on habeas corpus, appellate

9    counsel raised this issue on direct appeal.  Further, since

10   counsel did attempt to cross-examine Denise Wyatt on her possible

11   motive to fabricate and falsely accuse Petitioner, attempted

12   to make an offer of proof, and elaboratedupon that offer both

13   after Wyatt was excused and in a new trial motion, he could

14   not possibly have had any tactical reason for not articulating

15   his offer of proof more fully at an earlier time.  Assuming

16   that counsel's offer of proof was inadequate, as the State

17   opined, then defense counsel was - by definition -

18   constitutionally ineffective.

19       Trial counsel's inability to adequately articulate his

20   offer of proof cannot be dismissed as a case of "no harm, no

21   foul."  There is a reasonable probability that, had counsel

22   done his job, and had the court allowed the proffered cross-

23   examination, evidence could have been elicited which might have

24   resulted in a more favorable outcome.  The prosecution's case

25   was not nearly as "overwhelming" as the State suggests, and

26   effective cross-examination could have made a real difference.

27   For the foregoing reasons, cases, and statutes review is needed.

28   ///

1

                    C O N C L U S I O N

2

3        For the reasons, facts, laws, and circumstances herein,

4   this Court should grant review of the issues.

5   Dated:  _July-31-08_                    _Jose L. Reyes_
                                            Jose Luis Reyes
6                                           Petitioner In Pro Se

7

8                                           Respectfully Submitted,

9

10                                          _B. Thomas BuenaVista_
                                            B. Thomas BuenaVista
11                                          Petitioners Authorized Asst.
                                            CDC#: K-47864

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# C E R T I F I C A T E   O F   B R I E F   L E N G T H

I, B. thomas BuenaVista, certify the following to the best of my knowledge:

1.  The within brief is a mono spaced typeface of not more than 10.5 characters per inch.  The characters appear to be 10 to 10.5 per inch.  The brief consists of 4,662 words.  The brief averages less than 250 250 words per page.

2.  The spacing is double-spaced, excepting for any quotes which may appear herein. I certify thisis true to the best of my knowledge.

Dated:  *May 14, 2008*                    /s/ *B. thomas BuenaVista*

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

85 34769

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _____, declare:

I am over 18 years of age and a party to this action.  I am a resident of _____

_____Prison,

in the county of _____,

State of California.  My prison address is: _____,

_____.

On_____,

(DATE)

I served the attached: _____

_____

(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined.  The envelope was addressed as follows:

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on *July-31-08*                    *Jose L. Reyes*

(DATE)                              (DECLARANT'S SIGNATURE)

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes  ☒ No

24. If your answer to #23 is "Yes," give the following information:

    (a)  Name of Court: _____

    (b)  Case Number: _____

    (c)  Date action filed: _____

    (d)  Nature of proceeding: _____

    _____

    (e)  Grounds raised:

    _____

    _____

    _____

    _____

    (f)  Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes  ☐ No

25. Give the name and address. if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a)  At preliminary hearing:

                                `Alan Williams`
                                `2550 Fifth Avenue, #520`

    (b)  At arraignment and plea:    `San Diego, CA  92103`

    (c)  At trial:                          `Same`

    (d)  At sentencing:               `Same`

    (e)  On appeal:  `J. Milberg, 300 North Lake Ave., #320, Pasadena`

    (f)  In any post-conviction proceeding:

    (g)  On appeal from any adverse ruling in a post-conviction proceeding:

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☒ Yes ☐ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes ☒ No

   (a) If so, give name and location of court that imposed sentence to be served in the future:

   _____

   (b) Give date and length of the future sentence: _____

   _____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   ☐ Yes ☐ No

28. Date you are mailing (or handing to a correctional officer) this Petition to this court:

_____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.


_____
                     SIGNATURE OF ATTORNEY (IF ANY)


I declare under penalty of perjury that the foregoing is true and correct. Executed on


*July-31-08*
_____     *Jose L. Reyes*_____
     (DATE)                   SIGNATURE OF PETITIONER



NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

FILED
Stephen M. Kelly, Clerk
MAR 15 2006
Court of Appeal Fourth District

|  |  |
|---|---|
| THE PEOPLE, | D045593 |
| Plaintiff and Respondent, |  |
| v. | (Super. Ct. No. SCE238071) |
| JOSE LUIS RUIZ REYES, |  |
| Defendant and Appellant. |  |

APPEAL from a judgment of the Superior Court of San Diego County, William J. McGrath, Judge. Affirmed.

A jury convicted Jose Luis Reyes of two counts of assault with a deadly weapon or with force likely to cause great bodily injury, three counts of corporal injury to a spouse or cohabitant, and one count of battery on the parent of his child.[1] The jury found Reyes used a deadly weapon in one count of assault and one count of corporal injury.

---

[1] The jury also found Reyes not guilty of making a criminal threat and the court dismissed a false imprisonment charge.


EXHIBIT A

The court imposed a sentence of 18 years and four months. On appeal, Reyes contends the trial court improperly denied him the opportunity to cross-examine the victim about her potential bias against Reyes. We reject this contention and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

*Evidence at Trial*

Reyes had an intermittent romantic relationship with the victim, Denise Wyatt. They have one daughter together. Wyatt also has a son, who was nine years old at the time of trial.

On September 11, 2003, Reyes went to Wyatt's apartment between 4:00 a.m. and 5:00 a.m. After Reyes used the restroom, he sprayed beer on Wyatt, punched her in the head, and threw a beer bottle at her, hitting her in the forehead. Although he did not see what had happened, Wyatt's son heard his mother screaming after Reyes went into Wyatt's bedroom. He also saw a cut on his mother's face. In addition to the son's testimony, two police officers testified about observing Wyatt's injuries shortly after the incident.[2]

On October 15, 2003, Reyes again went to Wyatt's apartment. After they started arguing, Wyatt walked out of the bedroom and into the kitchen to get away from Reyes. Reyes followed Wyatt into the kitchen. When Reyes saw a "hickey" on Wyatt's neck, he became angry and punched Wyatt in the face, causing her to fall. After she fell,

---

2    One police officer testified at trial. The parties stipulated to read the other police officer's preliminary hearing testimony into the record.

2

*1 0*

Wyatt crawled out of the kitchen and into the living room. As she was crawling into the

living room, Reyes kicked her in the head and side. Reyes continued kicking Wyatt until

he slipped and then left the apartment. After Reyes left, Wyatt went to the emergency

room because her eye was bleeding, bruised, and swollen. She also had a swollen and cut

lip.

Wyatt's friend Amanda Aguilar corroborated Wyatt's testimony about this event.

The nurse practitioner who treated Wyatt, a police officer, and a neighbor also testified.

The nurse practitioner stated Wyatt told her "the father of her child" injured her. The

police officer testified Wyatt told him Reyes caused her injuries. One of Wyatt's

neighbors testified he heard screaming coming from Wyatt's apartment and then saw

Reyes run by him.

The third incident occurred on February 1, 2004. Wyatt was at a motel with Reyes

and one of Reyes's friends. Wyatt asked the friend to stay at the motel because Wyatt

believed Reyes was angry and wanted to fight with her. After Wyatt again asked the

friend not to leave, Reyes punched Wyatt, causing her eye to bleed. A police officer

testified he arrived at the motel shortly after the incident and saw a cut on Wyatt's face.

On March 31, 2004, Reyes was driving Wyatt's car and had difficulty seeing

because the windshield was dirty. When Wyatt tried to explain why the windshield was

dirty, Reyes backhanded Wyatt twice in the head. Wyatt then jumped out of the moving

car to get away from Reyes. Wyatt's son was in the back seat and witnessed Reyes

hitting his mother.

Wyatt reported all four incidents to the police. In addition to the testimony described above, the prosecution introduced photographs of Wyatt's injuries from all but the March 31 incident. Wyatt's son testified to witnessing Reyes hit Wyatt on March 31.

Defense counsel impeached Wyatt with her testimony she used methamphetamine on a daily basis. The defense did not call any witnesses or present any evidence.

*Cross-Examination of Denise Wyatt*

During defense counsel's cross-examination of Wyatt, defense counsel asked where Wyatt's daughter was on March 31. Wyatt responded that her daughter was not living with her. Defense counsel then asked whether Wyatt and Reyes "ever argue[d] about [your daughter]" and her placement. Wyatt responded they never argued about her or her placement. Defense counsel then asked, "When was [your daughter] placed with [Reyes's] mother?" The prosecutor objected based on relevance, and the court sustained the objection.

Following the court sustaining the objection, defense counsel did not make an offer of proof for his question about Wyatt's daughter. Instead, defense counsel began another line of questioning. When defense counsel asked for a sidebar conference one question later, he again failed to make an offer of proof. Only after Wyatt was excused as a witness (but still subject to recall) did defense counsel state he was asking about the daughter because "part of the defense's theory is . . . [Wyatt] is losing [her daughter] because DSS has taken [her daughter] away from her . . . . She's in a foster home—could be spite against Mr. Reyes to fabricate." The court responded, "Well, [Wyatt has] been excused as a witness, number one, and I appreciate your not getting into anything like

4

that prior to discussing it with the Court. I'm not sure I see the [¶] . . . [¶] connection between what she may have testified to and whether or not she's lost her kids. Unless there is more of a substantial connection that you can give as an offer of proof, I think I would not be allowing that type of testimony in." Defense counsel responded, "Thank you. I wanted to make sure we got that on the record."

In moving for a new trial, Reyes argued that the court erred in refusing to permit his counsel to question Wyatt about custody issues concerning their daughter. The court denied the motion, stating "the potential probative value of that evidence was minimal and was outweighed by the time it would take to present it and the somewhat minimal relevance that it had to the issues that the defendant has indicated they would have liked to present."

## DISCUSSION

Reyes contends the trial court erred in refusing to permit his counsel to cross-examine Wyatt about whether Wyatt had a motive to cooperate with the prosecution because of "her fear of losing [custody of] her children." Reyes contends the court's ruling violated his Sixth Amendment right to confront his accuser. We conclude Reyes waived this issue because he failed to make a sufficient offer of proof as to the relevancy and basis for this line of questioning. Alternatively, we conclude the trial court did not abuse its discretion and in any event, the court's ruling was not prejudicial.

To preserve the exclusion of evidence as an issue for appeal, counsel must inform the court of the substance, purpose, and relevance of the excluded evidence. (Evid. Code, § 354, subd. (a); *People v. Morrison* (2004) 34 Cal.4th 698, 711.) Although a party need

not make a specific offer of proof if the evidence is sought during cross-examination,

counsel must explain the relevance of the question and the information sought. (Evid.

Code, § 354, subd. (c); *People v. Coleman* (1970) 8 Cal.App.3d 722, 729; see also *People*

*v. Allen* (1986) 42 Cal.3d 1222, 1270, fn. 31.)  If defense counsel fails to clarify the

relevance of the information, the issue is waived. (*Coleman, supra*, 8 Cal.App.3d at p.

731.)

In *People v. Coleman*, the court sustained the prosecutor's relevance objection

when defense counsel asked the robbery victim on cross-examination where the victim

acquired the money defendant stole from him.  (*People v. Coleman, supra*, 8 Cal.App.3d

at p. 727.)  After the court sustained the objection, defense counsel did not pursue the

question or make an offer of proof as to the question's relevance. (*Ibid.*)  The appellate

court held the issue was waived, stating: "In the face of an objection by the prosecutor

and the statement of defense counsel, it should have been clear that the judge was

unaware of the materiality of the question if, indeed, it had a material purpose; the judge

did not suggest that counsel refrain from further related inquiry; and defense counsel

made no offer of proof or other attempt to explain a relevant purpose of the question, but

abandoned the direct line of inquiry and moved on to proper and related questions . . . ."

(*Id.* at pp. 730-731.)

Here, defense counsel asked Wyatt on cross-examination, "When was [your

daughter] placed with [Reyes's] mother?"  Similar to *Coleman*, the relevance of defense

counsel's question was unclear.  The court could not determine defense counsel was

inquiring about Wyatt's potential bias or motive to fabricate her testimony from a

6

question about where the daughter was living. Therefore, defense counsel was required to explain the question's relevance. However, defense counsel failed to state why the daughter's placement was relevant to Wyatt's testimony against Reyes. Instead, defense counsel began another line of questioning. At a sidebar one question later, defense counsel again failed to explain the relevance of the information sought. Not until Wyatt was excused from the witness stand, although still subject to recall, did defense counsel state the question was relevant, "because DSS has taken [Wyatt's daughter] away from her . . . . She's in a foster home—could be spite against Mr. Reyes to fabricate." This response was unclear because it did not clarify the claimed connection between Wyatt's daughter's placement and Wyatt's purported bias against Reyes. When the court again invited an offer of proof, defense counsel failed to give one for the third time. Therefore, because defense counsel did not provide a reasonable explanation for the question after he was given the opportunity to do so on several occasions, the issue was not properly preserved for appeal. (See *People v. Coleman, supra,* 8 Cal.App.3d at p. 731.)

Even if the issue was not waived, the court acted within its discretion in sustaining the prosecutor's objection. Generally, evidence tending to prove the existence of bias or an improper motive is admissible in determining the credibility of a witness. (Evid. Code, § 780, subd. (f).) However, evidence of a witness's improper motive requires proof of "'*the witness'* state of mind.'" (*People v. Ramos* (1997) 15 Cal.4th 1133, 1165.) Moreover, evidence is properly excluded when counsel offers only the conclusion the witness is biased without some foundational evidence supporting the conclusion. (*Id.* at pp. 1165-1166.) Further, although revealing improper motive is an important function of

7

cross-examination, the court retains discretion to reasonably limit cross-examination on matters involving prejudice, confusion of the issues, or marginally relevant evidence. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 678-679; *People v. Brown* (2003) 31 Cal.4th 518, 545.)

The trial court did not abuse its discretion in sustaining the prosecutor's objection. The relevance of the line of questioning was not clear and defense counsel failed to offer any basis for inferring that Wyatt blamed Reyes for losing custody of their daughter and therefore sought revenge against him or that Wyatt believed she would regain custody if she testified against Reyes. To the contrary, Wyatt explicitly denied that she and Reyes had any conflicts over their daughter's custody or placement. Moreover, because Wyatt admitted using methamphetamine daily, it is likely her drug use was a significant factor in her losing custody. Defense counsel's later conclusory statement that Wyatt may have "spite against Mr. Reyes to fabricate" based on their daughter's placement was unclear and not supported by any foundational facts or evidence as to Wyatt's state of mind. Therefore, the court acted within its discretion in determining the evidence sought was not relevant and/or that any slight probative value was outweighed by the time it would take to present the evidence and potential for confusing the jury on a collateral issue.

For similar reasons, we reject Reyes's assertion that the court's denial of cross-examination violated Reyes's Sixth Amendment right to confront his accuser. To state a violation of the Confrontation Clause of the Sixth Amendment, a defendant must show the jury "might have received a significantly different impression of [the witness's] credibility had [defendant's] counsel been permitted to pursue his proposed line of cross-

8

examination." (*Delaware v. Van Arsdall, supra*, 475 U.S. at p. 680; *People v. Frye* (1998) 18 Cal.4th 894, 946.) There was no basis to conclude the jury would have evaluated Wyatt's testimony any differently if defense counsel had been allowed to probe into the reasons that Wyatt's and Reyes's daughter no longer lived with Wyatt. Wyatt denied that she had any conflicts with Reyes over the child, and there was no evidence to support a contrary inference. The jury would not have had a significantly different impression of Wyatt had counsel been permitted to ask Wyatt further questions about her daughter's placement with Reyes's mother. (See *Van Arsdall, supra*, 475 U.S. at p. 680; *Frye, supra*, 18 Cal.4th at p. 946.)

Reyes relies on *People v. Stewart* (1983) 145 Cal.App.3d 967 to contend cross-examination should be allowed to explore whether the witness has an improper motive even when there is no evidence of an improper motive. Reyes's reliance on *Stewart* is misplaced. In *Stewart*, when the defense counsel asked the defendant's accomplice about her possible motive to testify against the defendant because the accomplice had been punished for her participation in the crime, the trial court sustained the prosecutor's relevance objection stating there was no evidence of revenge. (*Id.* at pp. 976-977.) Defense counsel replied he needed an opportunity to determine whether the witness was seeking revenge. (*Id.* at p. 977.) The court responded, "All she is doing, here—she is under oath, *telling the truth, that isn't revenge.* I don't think it goes to prejudice, either—sustained." (*Ibid.*) The appellate court held this constituted reversible error because the trial court "limit[ed] cross-examination of a key witness in a material area, *[and] comment[ed] on the credibility of that witness*, without informing the jury that [the

9

‸‸

court's] statements were merely its personal opinion . . . ." (*Id.* at pp. 978-979, italics added.)

Unlike in *Stewart*, there was no evidentiary basis for defense counsel's question about Wyatt's daughter and the court sustained an objection only to a question concerning the timing of the daughter's placement. Additionally, the trial court did not comment on the truthfulness of Wyatt's testimony and did not hold any discussions as to the question's relevance in front of the jury.

In any event, the court's sustaining the prosecutor's objection to a single question did not result in any prejudice to Reyes. Under the *Chapman* standard applicable to constitutional rights, "[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." (*Delaware v. Van Arsdall, supra*, 475 U.S. at p. 684; see also *Chapman v. California* (1967) 386 U.S. 18, 24.)

Although the court did not permit Reyes's cross-examination questions about his daughter's placement, defense counsel still impeached Wyatt's credibility through her admitted daily methamphetamine use. Moreover, the evidence against Reyes was overwhelming. Wyatt testified to all four incidents of abuse, each of which was also corroborated by other witnesses. Wyatt's son and friend testified to either seeing or hearing three of the incidents. Additional evidence included photographs of Wyatt's injuries on three occasions and her contacting the police after each incident. Police officers also testified to responding to Wyatt's calls on three occasions. Reyes did not

call any witnesses or present any evidence in his defense. On this record, the claimed

evidentiary error was harmless beyond a reasonable doubt.

In his reply brief, Reyes contends for the first time he had ineffective assistance of

counsel because defense counsel failed to make an adequate offer of proof for his

attempted cross-examination of Wyatt regarding her alleged bias or motive for revenge

against Reyes. Reyes's assertion is waived because he did not raise it in his opening

brief. (*People v. Adams* (1990) 216 Cal.App.3d 1431, 1441 fn. 2.) In any event, we

reject this claim on the merits.

To succeed on an ineffective assistance of counsel claim, Reyes must first prove

his counsel's assistance was so deficient that it was unreasonable. (*Strickland v.

Washington* (1984) 466 U.S. 668, 687; *People v. Ledesma* (1987) 43 Cal.3d 171, 216.)

Second, Reyes must prove "a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability

is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra*,

466 U.S. at p. 694; *Ledesma, supra*, 43 Cal.3d at pp. 217-218.) When the record supports

that counsel's omissions may have resulted from an informed tactical choice within the

range of reasonable competence, the conviction must be affirmed. (*People v. Bolin*

(1998) 18 Cal.4th 297, 317.) If there is not an adequate record to explain counsel's

challenged actions, the "claim of ineffective assistance . . . is more appropriately made in

a habeas corpus petition." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

Reyes is unable to meet his burden. Although the court sustained defense

counsel's cross-examination question, there are no facts on the record showing that Wyatt

11

would receive favorable treatment on custody issues in exchange for her testimony or that she blamed Reyes or was seeking revenge against him because their daughter was no longer living with her. To the contrary, Wyatt denied that she and Reyes had conflicts pertaining to their daughter. Moreover, defense counsel's failure to make an offer of proof may have been the result of a tactical decision. If defense counsel asked Wyatt if county protective services removed their daughter because of Reyes's abuse and she blamed Reyes for this loss of custody, the question would have strengthened the prosecution's case and weakened Reyes's defense by tending to show he did abuse Wyatt. Additionally, even if counsel had been permitted to cross-examine Wyatt on this issue, the outcome would not have been different given the strength of the evidence against Reyes.

## DISPOSITION

The judgment is affirmed.

_____
HALLER, Acting P. J.

WE CONCUR:

_____
McDONALD, J.

_____
AARON, J.



S160370

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re JOSE LUIS REYES on Habeas Corpus

---

The petition for writ of habeas corpus is denied.  (See *In re Swain* (1949) 34 Cal.2d 300, 304; *People v. Duvall* (1995) 9 Cal.4th 464, 474.)

SUPREME COURT
FILED

JUL - 9 2008

Frederick K. Ohlrich Clerk

Deputy

GEORGE
Chief Justice

F I L E D
Clerk of the Superior Court

MAR 2 3 2007

By: W. STANGL, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO, EAST COUNTY DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF: ) | EHC552 |
| ) | |
| Jose Luis Reyes, ) | SCE238071 |
| ) | |
| ) | ORDER DENYING PETITION |
| PETITIONER. ) | FOR WRIT OF HABEAS |
| ) | CORPUS |

THIS COURT HAVING READ THE PETITION FOR WRIT OF HABEAS CORPUS AND THE FILE IN THE ABOVE CAPTIONED MATTER FINDS AS FOLLOWS:

On September 27, 2004, after a jury trial presided over by Judge William J. McGrath, the petitioner was found guilty of two counts of assault with a deadly weapon or with force likely to cause great bodily injury, three counts of corporal injury to a spouse or cohabitant, and one count of battery on the parent of his child. The jury found petitioner used a deadly weapon in one count of assault and one count of corporal injury. The jury found petitioner not guilty of making a criminal threat and the court dismissed a false imprisonment charge. On November 30, 2004, the court imposed a prison sentence of 18 years and four months on petitioner.

On December 20, 2004, petitioner filed a notice of appeal. On appeal, petitioner argued the trial court improperly denied him the opportunity to cross-examine the alleged

1  victim, Denise Wyatt, about her potential bias against him. On June 20, 2006, the court

2  received the remittitur affirming the judgment.

3      The petitioner has now filed the present petition for writ of habeas corpus raising the

4  following issues: (1) ineffective assistance of trial counsel and (2) ineffective assistance of

5  appellate counsel.

6      Every petitioner, even one filing in pro per, must set forth a prima facie statement of

7  facts which would entitle him or her to habeas corpus relief under existing law. (*In re Bower*

8  (1985) 38 Cal.3d 865, 872; *In re Hochberg* (1970) 2 Cal.3d 870, 875, fn. 4.) A petitioner in

9  habeas corpus bears the burden of proving the facts upon which he or she bases his or her

10  claim for relief. (*In re Riddle* (1962) 57 Cal.2d 848, 852.)

11      A petition for writ of habeas corpus cannot serve as a second appeal. (*In re Harris*

12  (1993) 5 Cal. 4th 813, 826.) "It is ... the general rule that issues resolved on appeal will not

13  be reconsidered on habeas corpus (*In re Waltreus* (1965) 62 Cal.2d 218, 225), and, 'in the

14  absence of special circumstances constituting an excuse for failure to employ that remedy,

15  the writ will not lie where the claimed errors could have been, but were not, raised upon a

16  timely appeal from a judgment of conviction.' (*In re Dixon* [1953] 41 Cal.2d 756, 759.)" (*In re*

17  *Clark* (1993) 5 Cal.4th 750, 765.) Nevertheless, denial of the right to effective assistance of

18  counsel is one error which may be raised by a petition for writ of habeas corpus whether or

19  not it was already raised on appeal. (*People* v. *Jackson* (1973) 10 Cal.3d 265, 268.)

20      For a convicted defendant to establish that counsel's assistance was so defective as

21  to require reversal of a conviction, the defendant must show: (1) that counsel committed error

22  so serious that his attorney was not functioning as the "counsel" guaranteed by the Sixth

23  Amendment, and (2) that the deficient performance prejudiced the defense. (*Strickland v.*

24  *Washington* (1984) 466 U.S. 668, 687; *People v. Ledesma* (1987) 43 Cal.3d 171, 216.)

25      "Judicial scrutiny of counsel's performance must be highly deferential." (*Strickland,*

26  *supra,* 466 U.S. at p. 689; *Ledesma, supra,* 43 Cal.3d at p. 216.) There is a strong

27  presumption that counsel's conduct falls within the "wide range of reasonable professional

28  assistance." (*Ibid.*) The second prong of prejudice must be "affirmatively proved."

(*Ledesma, supra*, 43 Cal.3d at p. 217.) To prove prejudice, defendant must establish the "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra*, 466 U.S. at p. 694.) Furthermore, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Id.* at p. 697.) "Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission." (*People v. Lucas* (1995) 12 Cal. 4th 415, 437.)

Petitioner contends his trial counsel rendered ineffective assistance by failing to investigate and call potential defense witnesses. The court of appeal opinion states that "[d]efense counsel impeached Wyatt with her testimony she used methamphetamine on a daily basis. The defense did not call any witnesses or present any evidence." (*People v. Reyes* (2006) 2006 Cal.App. Unpub. LEXIS 2081, 4.)

"We have never required counsel to investigate all prospective witnesses and we cannot presume prejudice from the mere fact of counsel's alleged inaction. ... [I]n order to establish a successful claim of inadequate trial representation, defendant must prove 'that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense.' (*People v. Jackson* (1980) 28 Cal. 3d 264289, citing *People v. Pope* (1979) 23 Cal.3d 412, 425.) The failure to call certain witnesses in a criminal trial will usually be deemed "trial tactics as to which [reviewing courts] will not ordinarily exercise judicial hindsight." (*People v. Beagle* (1972) 6 Cal. 3d 441, 458.)

Petitioner lists the names of four people he states would have impeached Ms. Wyatt's credibility. Petitioner states that he gave these names to his attorney before trial, but his trial attorney did not investigate or call any of the witnesses at trial. Petitioner fails to provide the

1  declarations of either his proposed witnesses or his trial counsel showing his attorney failed

2  to investigate these witnesses' statements or that these witnesses' testimony would have

3  impeached Ms. Wyatt's credibility.  Petitioner has not satisfied his burden of proving facts

4  showing his trial counsel committed error by failing to investigate or call any of these

5  witnesses or that petitioner was prejudiced thereby.

6      At trial, victim Denise Wyatt testified for the prosecution.  Petitioner and Ms. Wyatt are

7  the parents of a minor daughter.  During cross-examination, Ms. Wyatt testified that their

8  daughter was not living with her at the time of the last alleged battery.  Ms. Wyatt denied that

9  she and petitioner ever argued about their daughter or her placement.  Defense counsel then

10  asked, "When was [your daughter] placed with [petitioner's] mother?".  The prosecution

11  objected based on relevance and the court sustained the objection.  Defense counsel failed,

12  during Ms. Wyatt's cross-examination, to make an offer of proof to establish the relevance of

13  this question.  After Ms. Wyatt was excused as a witness (but still subject to recall), defense

14  counsel argued in a sidebar conference that Ms. Wyatt might fabricate testimony against

15  petitioner out of spite because their daughter was in foster care.  The court stated that

16  defense counsel needed to voice, as an offer of proof, a more substantial connection

17  between the victim's testimony and whether or not she lost her children.  Defense counsel

18  made no additional offer of proof.  The trial court ruled that the potential probative value of

19  this evidence and its minimal relevance to the issues was outweighed by the time it would

20  take to present it.

21      Petitioner contends that his appellate counsel's representation was ineffective in that

22  appellate counsel failed to "identify and raise all meritorious appellate claims."  "[A]ppellate

23  counsel ... performs properly and competently when he or she exercises discretion and

24  presents only the strongest claims instead of every conceivable claim." (*In re Robbins*

25  (1998)18 Cal. 4th 770, 810.)

26      Initially, appellate counsel argued the trial court violated petitioner's Sixth Amendment

27  right to effectively confront his accuser.  In the appellate brief, petitioner's appellate counsel

28

1   asserted that the trial court improperly refused to allow petitioner's trial counsel to ask the

2   victim about whether she feared losing her children if she failed to cooperate with the

3   prosecution. Petitioner's appellate reply brief asserted petitioner's trial counsel rendered

4   ineffective assistance by failing to make an adequate offer of proof to allow cross-

5   examination of Ms. Wyatt about this issue

6        The court of appeal concluded that petitioner waived the first issue when his trial

7   attorney failed to adequately explain the relevancy and basis for this line of questioning.

8   "[C]ounsel ordinarily need not make an offer of proof in order to challenge on appeal the trial

9   court's ruling sustaining an objection to a question asked on cross-examination.   (Evid.

10  Code, § 354; *People v. Coleman* (1970) 8 Cal.App.3d 722, 729.) This rule, however, does not

11  apply ... when it is clear the trial court has overlooked the question's probable relevance [or]

12  the court expressly states it sees no relevance to the question and repeatedly invites counsel

13  to suggest a theory of relevance." (*People v. Allen* (1986) 42 Cal. 3d 1222, 1270, fn. 31.)

14       Defense counsel failed to offer a reasonable explanation of the relationship between

15  the question asked and the victim's potential bias against petitioner, despite requests by the

16  trial court.  Thus, the issue was not properly preserved for appeal.  Although the appellate

17  court's opinion does not preclude petitioner from reasserting this argument on a petition for

18  writ of habeas corpus, the appellate court's analysis in this case is persuasive.

19

20       The court of appeal found that even if the issue was not waived by petitioner, the trial

21  court acted within its discretion in sustaining the prosecutor's objection.  The credibility of a

22  witness may be impeached by evidence showing "[t]he existence or nonexistence of a bias,

23  interest, or other motive." (Evid. Code, § 780, subd. (f).)  However, "[i]mpeachment by

24  showing improper motive depends on the witness' state of mind." (*People v. Ramos* (1997)

25  15 Cal. 4th 1133, 1165.)  The cross-examining attorney cannot rely on a mere conclusion that

26  the witness is biased or motivated by an improper motive.  The attorney must offer some

27  foundational evidence of bias or motive. (*Id.,* at pp. 1165-1166.)  Neither trial counsel,

28  appellate counsel, nor petitioner has proffered any evidence to show that the victim (a)

1    expected her testimony against petitioner would favorably affect her right to custody of her

2    children, or (b) blamed petitioner for losing custody of their daughter.

3        "The court in its discretion may exclude evidence if its probative value is substantially

4    outweighed by the probability that its admission will (a) necessitate undue consumption of

5    time or (b) create substantial danger of undue prejudice, of confusing the issues, or of

6    misleading the jury." (Evid. Code, § 352.) Ms. Wyatt testified that she and petitioner did not

7    argue about their daughter's placement in foster care. In addition, Ms. Wyatt admitted using

8    methamphetamines daily. This was likely a major reason why Ms. Wyatt lost custody of her

9    daughter. In contrast, neither defense counsel nor petitioner ever offered any evidence to

10   show Ms. Wyatt was either biased against petitioner because their daughter was in foster

11   care or motivated by an improper motive relating to the daughter's custody. Under the

12   circumstances, the trial court did not abuse its discretion by sustaining the prosecution's

13   objection. Moreover, the lack of evidence suggests petitioner was not prejudiced by the trial

14   court's ruling sustaining the prosecution's objection.

15       Petitioner has failed to show either his trial counsel or appellate counsel ineffectively

16   assisted him. Therefore, the court denies the petition for writ of habeas corpus.

17

18

19   **IT IS SO ORDERED.**

20

21   DATED:_____            _____

22                                         HERBERT J. EXARHOS

23                                         JUDGE OF THE SUPERIOR COURT

24

25

26

27

28

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

F I L E D
Steohen M. Kelly, Clerk

NOV 8 2007

Court of Appeal Fourth District

| | |
|---|---|
| In re JOSE LUIS RUIZ REYES | D051386 |
| on | (San Diego County Super. Ct. No. SCE 238071) |
| Habeas Corpus. | |

THE COURT:

The petition for writ of habeas corpus has been read and considered by Justices Benke, Huffman and Nares. We take judicial notice of petitioner's direct appeal No. D045593.

Petitioner had an intermittent romantic relationship with Denise Wyatt, the victim. They have a daughter together and Wyatt also has a son. On four separate occasions between September 2003 and March 2004 petitioner attacked Wyatt by punching, kicking, backhanding, and throwing beer bottles at her, sometimes in front of her son. The attacks caused cuts, bruises and swelling on Wyatt's face and head. For these actions petitioner was convicted of two counts of assault with a deadly weapon or with force likely to cause great bodily injury, three counts of corporal injury to a spouse or cohabitant, and one count of battery on the parent of his child. The jury found petitioner used a deadly weapon in one count of assault and one count of corporal injury. The court imposed a sentence of 18 years and four months. Petitioner appealed, and this court affirmed the judgment in No. D045593. The California Supreme Court denied review on June 14, 2006.

In this petition for writ of habeas corpus, petitioner argues (1) appellate counsel was ineffective in failing to raise "all meritorious appellate claims," including a claim of ineffective assistance of trial counsel for failing to make an adequate offer of proof to allow cross-examination of Wyatt; and (2) ineffective assistance of trial counsel for failing to investigate certain witnesses.

To make a claim of ineffective assistance of trial and appellate counsel, the petition must state facts and contain evidence to show: (1) the attorney's performance was

The petition is denied.

_____
HUFFMAN, Acting P. J.

Copies to:  All parties



JOSE LUIS REYES, V-61218
CSP-CORCORAN, 3A01-215
P.O. BOX 3461
CORCORAN, CA 93212


NOVEMBER 5, 2007


THE MANAGER/SUPERINTENDENT
545 E. MADISON AVE
EL CAJON, CA 92020


TO THE MANAGER/SUPERINTENDENT OF THE APARTMENT:

Please be advised that this REQUEST FOR INFORMATION AND BUSINESS
RECORD AND THE NOTICE THERETO IS BEING REQUEST OF YOU PURSUANT
TO THE CODE OF CIVIL PROCEDURE, Section 1985.3.  The requesting
party, the defendant in the case, PEOPLE v. REYES, csae no.
SCE238071, requests that you provide the following information:

> The full name and any information, including but not
> limited to, her forwarding address, her employment
> information, or information that might lead to her
> present whereabouts, of the individual who had resided
> in your apartment complex by the name of **DEENA**, during
> or about the year 2003.


Her whereabout is being sought because she was a percipient
witness in the above named case.  Your assistance in this matter
is most appreciated.


Sincerely yours,

Jose L. Reyes.

JOSE LUIS REYES, V-61218
CSP-CORCORAN, 3A01-215
P.O. BOX 3461
CORCORAN, CA 93212


August 6, 2007


W. Allan Williams
Attorney at Law
180 REA AVE #D
El Cajon, CA 92020


Dear Mr. Williams:

How are you?  I hope I haven't become so distant a memory that
you are wondering who this is.  You represented me in People v.
Jose Luis Reyes, Case # SCE 238071, in 2004.  I was charged with
assaulting my then girlfriend.  We went to trial and lost.  I
got 18 years.

I am currently preparing a habeas petition.  I have a friend who's
helping with it and he has asked some questions that I am unable
to answer.  I am hoping you'll help me answer them.

    1. What was our overall trial strategy?
    2. What did our defense depend on?
    3. What did you think our chance was then?

I recall a plea deal of 8 years was offered.  I regret awfully not
taking it.  My life's practically done because of this.  I want it
to be clear that I am not blaming you.  Your heart was in the right
place and that's what counts.  If anyone I blame myself for getting
involved with a woman who's so heartless.  But I gotta ask you and
I want you to know ahead of time that my purpose is to gather
information to support an ineffective assistance of counsel cliam.
I know this must be unpleasant and I am sorry to have to do this.
I remember I wanted to take the deal but you advise against it.
I didn't really understand what you said then.  I followed your
advise because I trust your judgment.  Can you tell me again so I
can relay it to my friend, why did you think there could be a better
result?

One last thing, can you see if you have anything in your file that
you think will help me.  Your notes, the reports by the investigator,
whatever written records of your investigation and research.
Please send them to me.

Mr. Williams, thank you for taking the time to answer this letter.
Your effort is very much appreciated.

                              Sincerely yours,  *Jose L. Reyes*

1          P R O O F   O F   S E R V I C E

2

3      I, the undersigned, declare:

       I am over 18 years of age and a party to the within action.
4
       My address is:
5
                         Jose Luis Reyes, V-61218
6                        3A01-215U / P.O. Box 3461
                         Corcoran, CA  93212-3461
7
       On, _____, I served a copy of the attached
8
Petition For Writ Of Habeas Corpus on the below named parties
9
by placing a true copy thereof in envelopes with first class
10
postage thereon fully prepaid, and delivering the sealed en-
11
velopes, in accord with procedures prescribed for sending legal
12
mail to the proper authority for deposit in the U.S. Mail at
13
CSP-Corcoran, in the County of Kings, State of California.
14
These were mailed to:
15
The State Attorney General's Office     U.S. District Court
16
300 S. Spring Street                    880 Front St., #4290
17
Los Angeles, CA  90013                  San Diego, CA  92101
18

19   Executed under penalty of perjury this *31* day of *July*, 2008,

20   at CSP-Corcoran, California.

21                                   *Jose X. Reyes*
                                     Declarant
22

23

24

25

26

27

28

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)                       -21-

85 34769

≈JS 44  (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Jose Luis Reyes

**FILING FEE PAID**  Yes
**IFP MOTION FILED**  Yes
**CONSENT TO**  Yes

DEFENDANTS

Adams, Warden

**FILED**

AUG - 4 2008

Kings

**SOUTHERN DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
BY ____ DEPUTY

**(b)** County of Residence of First Listed Plaintiff   Kings
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

None

Attorneys (If Known)

**'08 CV 1422 DMS CAB**

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

- ☒ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)  and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☒ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 850 Securities/Commodities |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 862 Black Lung (923) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | or Defendant) | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party | Determination Under |
| ☐ 240 Torts to Land | Accommodations | ☒ 530 General | | 26 USC 7609 | Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | | State Statutes |
| | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN  (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgement

## VI. CAUSE OF ACTION  (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

Title 28 U.S.C. § 2254

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____